UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEBORA MARTINEZ, MARICELA LARA
MOSSO and LEA LOPEZ, *individually and on
behalf of others similarly situated*,

                        Plaintiffs,

         -against-

ALIMENTOS SALUDABLES CORP. (d/b/a
ALIMENTOS SALUDABLES MEXICAN
GRILL), LUIS GONZALEZ, and
FRUCTUOSO FELIPE GONZALEZ,

                       Defendants.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
16 CV 1997 (DLI) (CLP)

**POLLAK**, United States Magistrate Judge:

On April 22, 2016, Debora Martinez, Maricela Lara Mosso, and Lea Lopez (collectively,

"plaintiffs"), commenced this action against defendants Alimentos Saludables Corp. (d/b/a/

Alimentos Saludables Mexican Grill), Luis Gonzalez, and Fructuoso Felipe Gonzalez

(collectively, "defendants"), seeking unpaid overtime and minimum wages pursuant to the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL")

§ 650 et seq., as well as unpaid spread of hours wages, and damages stemming from defendants'

unlawful retention of gratuities and alleged failure to comply with the wage notice requirements

under the NYLL.

Despite proper service, defendants failed to answer or otherwise respond to the

Complaint. On August 4, 2016, plaintiffs requested entry of a Certificate of Default, and on

August 8, 2016, the Clerk of Court entered Certificates of Default against each defendant. (ECF

Nos. 15–17). Thereafter, on October 6, 2016, plaintiffs moved for a Default Judgment against

defendants (ECF No. 18), which the Honorable Dora L. Irizarry referred to the undersigned on April 11, 2017 to issue a Report and Recommendation as to damages.

For the reasons set forth below, the Court respectfully recommends that the motion for default judgment be granted, and that plaintiffs Martinez, Mossa, and Lopez be awarded a total of $753,073.14.

## FACTUAL BACKGROUND

Defendant Alimentos Saludables Mexican Grill ("Alimentos") is a restaurant located at 5919 Fourth Avenue, Brooklyn, New York. (Compl.[1] ¶ 21). Defendants Luiz Gonzalez and Fructuoso Felipe Gonzalez are alleged to be the owners, officers, and/or agents of Alimentos. (Id. ¶¶ 23, 25). According to the Complaint, both Luis Gonzalez and Fructuoso Felipe Gonzalez possessed authority to determine wages and compensation for employees, establish the schedules of employees, maintain records, and hire and fire staff. (Id. ¶¶ 24, 26). Plaintiffs allege that Alimentos, Luiz Gonzalez and Fructuoso Felipe Gonzalez were all employers within the meaning of the FLSA and NYLL. (Id. ¶ 32).

Plaintiff Debora Martinez is a resident of the State of New York, residing in Kings County, who began working for defendants in or around January 2002. (Compl. ¶¶ 14-15; Martinez Decl.[2] ¶¶ 2, 6, ECF No. 19-8). Martinez worked at Alimentos through April 2016 as a cook, food preparer, waitress, porter and general assistant. (Compl. ¶ 41; Martinez Decl. ¶ 7). Martinez alleges that she worked five to six days, or approximately 46 to 62 hours, per week

---

[1]Citations to "Compl." refer to the Complaint, filed on April 4, 2016.

[2]Citations to "Martinez Decl." refer to the Declaration of Debora Martinez, attached as Exhibit H to the Declaration of Michael Faillace in Support of Plaintiffs' Motion for Default Judgment ("Faillace Decl."), filed on October 6, 2016.

without a break or meal period of any length.  (Compl. ¶¶ 45-47, 54; Martinez Decl. ¶¶ 12-14, 22).  She claims that she was paid a fixed weekly wage in cash, in the range of $475 to $525 per week, regardless of the number of hours she worked.  (Compl. ¶¶ 48-51; Martinez Decl. ¶¶ 15-18).

Plaintiff Maricela Lara Mosso is a resident of the State of New York, residing in Kings County, who began working for defendants in or around April 2003.  (Compl. ¶¶ 16-17; Mosso Decl.[3] ¶¶ 2, 8, ECF No. 19-9).   Mosso states that she worked at Alimentos initially through November 2014 and again from on or about March 2016 until April 2016 as a dishwasher, food preparer, cashier, waitress, and cleaner.  (Compl. ¶ 63; Mosso Decl. ¶ 9).  Mosso alleges that she worked six days per week, approximately 50 to 62 hours per week, without a break or meal period of any length.  (Compl. ¶¶ 67-68, 75; Mosso Decl. ¶¶ 13-14, 22).  Mosso also claims that she was paid a fixed weekly wage in cash, in the range of $375 to $500, regardless of the number of hours she worked.  (Compl. ¶¶ 69-73; Mosso Decl. ¶¶ 15-19).

Plaintiff Lea Lopez states that she is a resident of the State of New York, residing in Kings County, who began working for defendants in or around May 2004.  (Compl. ¶¶ 19-20; Lopez Decl.[4] ¶¶ 2, 6).  Lopez states that she worked at Alimentos through about 2007, then from approximately 2008 through 2009, and finally from approximately April 2011 until April 2016.  (Compl. ¶ 19; Lopez Decl. ¶ 6).  Lopez worked as a cook, dishwasher, porter, waitress, food preparer and general assistant.  (Compl. ¶ 84; Lopez Decl. ¶ 7).

Lopez alleges that she worked six days per week, approximately 61.5 hours per week,

---

[3]Citations to "Mosso Decl." refer to the Declaration of Maricela Lara Mosso, attached as Exhibit I to the Faillace Decl.

[4]Citations to "Lopez Decl." refer to the Declaration of Lea Lopez, attached as Exhibit J to the Faillace Decl.

without a break or meal period of any length.  (Compl. ¶¶ 88, 93; Lopez Decl. ¶ 12).  The Complaint alleges that Lopez was paid a fixed weekly wage in cash, in the amount of $420 per week, regardless of the number of hours she worked.  (Compl. ¶¶ 89-91; Lopez Decl. ¶¶ 13-15).

Despite regularly working in excess of 40 hours a week and more than 10 hours per day, plaintiffs allege in the Complaint that they were never paid minimum wage,[5] overtime (in the amount of time and a half), or "spread of hour" pay while employed by Alimentos.  (Compl. ¶¶ 101-102).  Plaintiffs further allege that defendants unlawfully retained a portion of the tips customers left for them, returning only a small amount, and failing to compensate plaintiffs at the applicable minimum wage.  (Compl. ¶¶  58, 79, 97; Martinez Decl. ¶ 25; Mosso Decl. ¶ 25; Lopez Decl. ¶ 21).  The Complaint alleges that defendants failed to maintain accurate and complete timesheets and payroll records of plaintiffs' time worked.  (Compl. ¶¶ 55, 76, 94).  Furthermore, plaintiffs claim that defendants failed to maintain records of tips earned by plaintiffs and deducted from plaintiffs' earned wages for tip income without informing plaintiffs.  (Id. ¶¶ 107-109).  In addition, plaintiffs allege that defendants failed to post required wage and hour posters in the workplace and failed to provide plaintiffs, or similarly situated employees, with required wage and hour records or statements of their pay received at the time of hiring or at the time of payment thereafter.  (Id. ¶¶ 117-19, 121-22).

The Complaint contains eight causes of action: 1) claims for FLSA minimum wage and overtime compensation violations (id. ¶¶ 126-32, 133-36); 2) claims for minimum wage and overtime violations under NYLL (id. ¶¶ 137-41, 142-45); 3) claims for unpaid spread of hours wages (id. ¶¶ 146-49); 4) a claim under NYLL § 195(1) for wage notice violations (id. ¶¶ 150-

---

[5] As discussed in more detail infra at 26-30, plaintiffs allege minimum wage violations in the Complaint, but drop that claim in their request for default judgment.

52); 5) a claim under NYLL § 195(3) for wage statement violations (id. ¶¶ 153-55); and 6) a claim under NYLL § 196-d for withholding plaintiffs' tips. (Id. ¶¶ 156-61).

## PROCEDURAL BACKGROUND

Plaintiffs commenced this action on April 22, 2016. Defendants were served on May 18, 2016. (See Faillace Decl. ¶ 5). On August 4, 2016, when none of the defendants had responded to the Complaint, plaintiffs requested entry of a certificate of default against defendants. (Id. ¶ 9; see ECF Nos. 12-14). The Clerk of Court entered defaults against defendants on May 18, 2016. (ECF Nos. 15-17). Plaintiffs then filed the instant motion for default judgment on October 6, 2016. (ECF No. 18).

On April 11, 2017, the Honorable Dora L. Irizarry referred the motion to the undersigned to prepare a Report and Recommendation as to damages.

## DISCUSSION

I.      Entry of Default

   A.   Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id.; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").

Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that default judgment is an extreme remedy, and therefore should be entered only as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). Although the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that district courts must balance that interest with the responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and all doubts should be resolved in favor of the defaulting party. Id. Thus, a plaintiff is not entitled to a default judgment and any concomitant damages as a matter of right simply by virtue of a defendant's procedural default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing defendants on notice of the relief sought, see Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of a litigation, so long as the complaint

provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The plaintiffs bear the burden of establishing their entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). Upon entry of default, defendants are deemed to have admitted all well-pleaded factual allegations in the complaint pertaining to liability, but not legal conclusions or allegations relating to damages. Id.; Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiffs' burden to demonstrate that the uncontroverted facts establish each defendant's liability on each cause of action asserted. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). In determining whether the plaintiffs have met that burden, however, the Court draws all "reasonable inferences from the evidence offered" in plaintiffs' favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating each defendant's liability, the plaintiffs must also establish their entitlement to damages to a "reasonable certainty." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). Although "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."

Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases),

aff'd, 873 F.2d 38 (2d Cir. 1989).  In the context of a motion for default judgment to recover

damages for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of

hours worked are presumed to be correct."  Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 83-

84.

      B.  Service of Process

Personal jurisdiction is a necessary prerequisite to entry of a default judgment.  If a

defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil

Procedure and does not waive formal service, the court lacks personal jurisdiction over the

defendant.  See Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 373 (2d Cir. 1978);

see also Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 709 F. Supp. 1279, 1282

(S.D.N.Y. 1989) (explaining that proper service on a defendant of a summons and complaint is a

prerequisite to personal jurisdiction).

Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of

process must be effected in order to subject a defendant to the court's jurisdiction.  See Fed. R.

Civ. P. 4.  Thus, it is well established that a failure to demonstrate that the summons and

complaint were properly served on a defendant bars the entry of a default judgment.  See, e.g.,

Orellana v. World Courier, Inc., No. 09 CV 576, 2010 WL 3861002, at *2 (E.D.N.Y. Aug. 24,

2010) (denying motion for default judgment against a defendant for whom plaintiff had not

adequately proved service); Cowder v. Administration for Children & Families, No. 09 CV 628,

2010 WL 723440, at *2 (E.D.N.Y. Mar. 1, 2010) (denying motion for default judgment where

service had not been properly effected); Llaviganay v. Cipriani 110 LLC, No. 09 CV 737, 2009

WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (noting that inadequate proof of service bars entry

of default judgment).

Rule 4(e)(1) provides, however, that a party may effect service by "following state law . . . [of] the state where the district court is located." Fed. R. Civ. P. 4(e)(1). Thus, in this case, service may also be deemed proper if plaintiff has complied with New York law. Here, defendants have not indicated any intention to waive service; thus, the issue is whether all necessary documents have been served in compliance with the requirements of Rule 4.

The technical requirements of Rule 4 notwithstanding, courts have recognized that the fundamental purpose of service is to give defendants notice of the claims against them; due process requires that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." DPWN Holdings (USA), Inc. v. United Air Lines, 871 F. Supp. 2d 143, 154 (E.D.N.Y. 2012) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). At its core, this standard is one of reasonableness. Id. Thus, courts will deem valid efforts to serve outside the bounds of Rule 4 where a defendant has "actual notice" of the relevant documents. See, e.g., Burda Media, Inc. v. Blumenberg, No. 97 CV 7167, 2004 WL 1110419, at *6-7 (S.D.N.Y. May 18, 2004).

1) Service upon the Individual Defendants

Under Rule 4 of the Federal Rules of Civil Procedure, a natural person may be served personally by "delivering a copy of the summons and of the complaint to the individual personally" or by "leaving a copy of the [pleadings] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(A), (B). New York law provides for service upon an individual by delivering the summons and complaint to "a person of suitable age and discretion at the actual place of

business, dwelling place or usual place of abode," to be followed by mailing a copy to the individual's "last known residence."  N.Y. C.P.L.R. § 308(2) (McKinney 1994).

In this case, the affidavit of the process server, Denise Lewis, does not indicate that either Luiz Gonzalez or Fructuoso Felipe Gonzalez were served personally or at their "dwelling or usual place of abode," in accordance with Federal Rule of Civil Procedure 4(e)(2)(A) or (B). Instead, the affidavit for each defendant states that the process server served each defendant by delivering the summons and complaint to the location of the Alimentos Saludables Corp. and leaving them with an individual identified as "Ms. Conception."  (Faillace Decl., Ex. C).

While service in this manner would not comply with Rule 4(e)(2), Section 308(2) of the C.P.L.R. permits service to be made on an individual's "actual place of business" by delivering the summons within the state to a person of suitable age or discretion at defendant's place of business and "by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential.'"  N.Y. C.P.L.R. § 308(2).  Lewis' affidavit of service indicates that in addition to delivering the Summons and Complaint to a person at each defendant's actual place of business, she mailed a copy of the papers to Alimentos Saludables Corp. at 5919 Fourth Avenue, Brooklyn, NY 11220.

Thus, the Court finds that, based on the affidavit of the process server, service upon the individual defendants Luis Gonzalez and Fructuoso Felipe Gonzalez complied with New York law and the Court may exercise personal jurisdiction over these defendants.

2)  Service Upon the Corporate Defendant

According to Rule 4, "[u]nless federal law provides otherwise or the defendant's waiver has been filed, a domestic . . . corporation . . . [may] be served . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent

authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B)

Service upon a corporation may also be effected in any manner authorized by state law for service. Fed. R. Civ. P. 4(e), (h). New York law provides that service upon a corporation may be made by delivering the pleadings to "an officer, director, managing or general agent, or cashier, or assistant cashier, or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1). Service upon a corporation may also be made in compliance with Section 306 of the N.Y. Business Corporation Law, which provides that:

> service of process on the secretary of state as agent of a domestic or authorized foreign corporation shall be made by personally delivering [all necessary documents] to . . . the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany . . . . Service of process on such corporation shall be complete when the secretary of state is so served.

N.Y. Bus. Corp. Law § 306(b)(1). Thus, a corporation registered to do business in New York may also be served by proper service upon the New York Secretary of State.

The affidavit of the process server, Heather Morigerato, states that Alimentos Saludables Corp. was served on May 18, 2016 by delivering a copy of the Summons and Complaint to Tammy Alexander, an authorized agent in the Office of the Secretary of State. (Faillace Decl., Ex. B). A restaurant under the name of "Alimentos Saludables Corp." is also listed in the New York Secretary of State website, along with an executive office address of 5919 Fourth Avenue, Brooklyn, NY 11220, with a Chief Executive Officer under the name of Fructuoso F. Gonzalez.

Based on the affidavit of the process server and the registered address of the corporate defendant, the Court finds that Alimentos Saludables is a corporation registered in the State of

New York and that plaintiffs properly effectuated service upon the corporate defendant by leaving a copy of the Summons and Complaint with the Secretary of State pursuant to N.Y. Bus. Corp. Law § 306.

C.  Default Determination

Defendants Alimentos, Luis Gonzalez, and Fructuoso Felipe Gonzalez did not appear in this action and failed to answer or otherwise respond to the Complaint.  The corporate defendant Alimentos also never obtained counsel through which to appear, and such a failure of a corporate defendant to obtain counsel constitutes a failure to defend because a corporation cannot proceed *pro se* in federal court.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (observing that "it is settled law that a corporation cannot appear other than by its attorney"); see also Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006); Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear only through counsel).  Each of those failures constitutes a default.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (E.D.N.Y. Oct. 19, 1992).

The filings in this matter demonstrate that each of the defendants was properly served.  It is evident that each defendant failed to plead or otherwise defend, and the Clerk of the Court properly entered each party's default as he was required to do.  See Fed. R. Civ. P. 55(a) (providing that where a party fails to plead or otherwise defend, and that failure is demonstrated by affidavit or other showing, "the clerk must enter the party's default").  Furthermore, the Court has not been presented with any reasons to justify delaying this action further.  The Court therefore turns to the issues of liability and damages that must be addressed prior to entry of default judgment.  See Fed. R. Civ. P. 55(b)(2).

II.    <u>Liability</u>

Plaintiffs assert causes of action under the FLSA and the NYLL seeking damages for unpaid minimum, overtime, and spread of hour wages, and damages owed from wage notice violations, from April 15, 2010 until April 19, 2016.  Each of these claims is addressed below.

A.  <u>Liability Under the FLSA</u>

To establish a claim under the FLSA, plaintiffs must prove that (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  <u>Edwards v. Community Enters., Inc.</u>, 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing <u>Tony & Susan Alamo Found. v. Secretary of Labor</u>, 471 U.S. 290, 295 (1985)).

1)  <u>Employer Subject to FLSA</u>

An employer is subject to both the minimum wage and overtime provisions of the FLSA if either (1) its employees are "engaged in commerce" or (2) the employer is an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207; <u>see also</u> <u>Padilla v. Manlapaz</u>, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009).  A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i)-(ii).  The statute defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively.  <u>Jacobs v.</u>

New York Foundling Hosp., 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007).

Individual coverage is established where the employees themselves are "engaged in commerce." In determining whether this is the case, courts examine the employment actions of each employee asserting a claim. Padilla v. Manlapaz, 643 F. Supp. 2d at 300. Enterprise coverage, on the other hand, exists where an employer: (1) has employees engaged in commerce or in the production of goods for commerce; and (2) has an annual gross volume of sales greater than $500,000.00. 29 U.S.C. § 203(s)(1)(A).

Here, plaintiffs allege that defendants were engaged in interstate commerce at all times relevant to their claims in this litigation. (Compl. ¶ 37). In the context of a default under the FLSA, courts do not require any additional factual allegations to establish enterprise coverage. See, e.g., Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding a complaint which simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State").

However, plaintiffs specifically allege in the Complaint that, "[i]n each year from 2010 to April 2016, the [d]efendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." (Compl. ¶ 36). In addition, plaintiffs have submitted declarations stating that during their periods of employment at Alimentos, they observed that ingredients, produce, and other items used daily at the restaurant were produced outside of the State of New York. (Martinez Decl. ¶ 9; Mosso Decl. ¶ 11; Lopez Decl. ¶ 9).

Thus, accepting these allegations as true, as the Court must in the context of a default, the

Court finds that plaintiffs have alleged sufficient facts to establish that defendant Alimentos qualifies as an employer under the FLSA.

2) <u>Individual Employer Doctrine</u>

This action was brought against defendant Alimentos and the individually named defendants Luis Gonzalez and Fructuoso Felipe Gonzalez. Plaintiffs allege that, during their employment at Alimentos, both Fructuoso and Luis Gonzalez were owners, managers, principals, or agents of defendant Alimentos, and had the power to establish employees' schedules, maintain records, and hire and fire employees. (Compl. ¶¶ 3, 24, 26; Martinez Decl. ¶ 5; Mosso Decl. ¶ 5; Lopez Decl. ¶ 5).

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). "Person" means "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). Thus, an individual may be held liable as an employer under the FLSA so long as he or she exercises "operational control" over the employee in question, <u>see Irizarry v. Catsimatidis</u>, 722 F.3d 99, 110 (2d Cir. 2013), and any individuals who are found to qualify as "employers" under the FLSA may be held jointly and severally liable to the plaintiff along with any corporate employer. <u>Moon v. Kwon</u>, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).

Based on the allegations in the Complaint, the Court finds that plaintiffs state a claim against Luis Gonzalez and Fructuoso Felipe Gonzalez as "employers" within the meaning of the FLSA. Thus, if the Court finds that plaintiffs are owed damages under either the FLSA or the NYLL, Alimentos, Luis Gonzalez, and Felipe Gonzalez will be jointly and severally liable to plaintiffs.

### 3) Employees Within the Meaning of FLSA

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. § 206(a). In determining whether a plaintiff is an "employee," the "ultimate question is . . . 'whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself].'" Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2006) (quoting Godoy v. Restaurant Opportunity Ctr. of New York, Inc., 615 F. Supp. 2d 186, 192 (S.D.N.Y. 2009)).

As discussed above, at all relevant times, plaintiffs allege they were employed by defendants and handled goods in interstate commerce. (Compl. ¶¶ 40, 43, 62, 65, 83, 86). Plaintiffs further allege that their hours, rate of pay, and method of compensation were controlled by defendants. (Compl. ¶¶ 24, 26; Martinez Decl. ¶ 5; Mosso Decl. ¶ 5; Lopez Decl. ¶ 5). Additionally, the Court cannot discern any basis for finding that plaintiffs fall within one of the FLSA's exemptions from minimum wage and overtime requirements. See 29 U.S.C. § 213(a) (setting forth the exemptions).[6]

Plaintiffs allege that they were regularly required to work in excess of 40 hours. (Compl.

---

[6]The Court notes that the burden of demonstrating that an employee falls within one of these exempted categories rests squarely with the employer. Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014) (noting that the exemptions are affirmative defenses which an employer must prove). Since defendants have defaulted, they have not availed themselves of any of the affirmative defenses provided by statute.

¶ 5; Martinez Decl. ¶ 11; Mosso Decl. ¶ 12; Lopez Decl. ¶ 11).  Specifically, plaintiff Martinez alleges that she typically worked between 46.5 hours and 61.5 hours per week while employed by defendants.  (Martinez Decl. ¶¶ 12-14).  Martinez claims that she was paid a weekly cash wage of $475 to $525 per week.  (Martinez Decl. ¶¶ 15-17).  Plaintiff Mosso alleges that she typically worked between 50 and 62 hours per week while employed by defendants.  (Mosso Decl. ¶¶ 13-14).  Mosso claims that she was paid weekly cash wages of between $375 to $500 per week.  (Mosso Decl. ¶¶ 15-18).  Plaintiff Lopez alleges that she typically worked 61.5 hours per week when employed by defendants.  (Lopez Decl. ¶ 12).  Lopez claims that she was paid a fixed cash wage of $425 per week.  (Lopez Decl. ¶ 14).  Plaintiffs allege that their weekly wages resulted in an hourly rate of pay that is less than the applicable minimum wage rate during various points of their employment.  (Compl. ¶ 5).  (But see note 5, supra).  Furthermore, plaintiffs allege that they worked more than 40 hours per week, but were never compensated at the overtime rate for the hours worked over 40.  (Martinez Decl. ¶ 21; Mosso Decl. ¶ 21; Lopez ¶ 17).

Since defendants are in default, the Court accepts as true plaintiffs' uncontroverted allegations as to liability and finds that plaintiffs have established the necessary elements to state a claim and to establish liability under the FLSA against both the corporate defendant Alimentos and against the individual defendants Fructuoso Felipe Gonzalez and Luis Gonzalez.

B.  Liability Under the NYLL

Plaintiffs also allege that defendants violated the NYLL by failing to compensate plaintiffs at the minimum wage rate of pay.  (But see note 5, supra).  The NYLL and the FLSA are nearly identical in analyzing minimum wage rate violations.  D'Arpa v. Runway Towing Corp., No. 12 CV 1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013).  Like the FLSA,

the NYLL establishes certain minimum wage rates and requires that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time worked in excess of 40 hours in a week pursuant to regulations issued by the New York State Commissioner of Labor upon recommendation by a wage board. See N.Y. Lab. L. §§ 655-56, 160; 12 N.Y. C.R.R. § 142-2.2; see also Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).

"The same elements are required to prove plaintiff's claim under [the] New York [L]abor [L]aw as under federal law." Padilla v. Sheldon Rabin, M.D., P.C., 176 F. Supp. 3d 290, 300 (E.D.N.Y. 2016) (quoting Lewis v. Alert Ambulette Serv. Corp., No. 11 CV 442, 2012 WL 170049, at *5 (E.D.N.Y. Jan. 19, 2012)). Thus, to recover under the NYLL, plaintiffs must prove that they were "employees" and that defendants were "employers" as defined by the statute. Lauria v. Heffernan, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009). Unlike the FLSA, the NYLL does not require that a defendant have a certain volume of business to meet its definition of "employer" to be subject to the law's requirements. See N.Y. Lab. L. § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").

In determining whether a defendant is an "employer" within the meaning of the NYLL, New York courts focus on the degree of control the alleged employer exercised over the alleged employee, analyzing whether the employee: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 34 (quoting Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198, 802 N.E.2d 1090, 1095, 770 N.Y.S.2d

692, 695, (2003)).  Just as under the FLSA, corporate and individual employers may be held jointly and severally liable.  See Asfaw v. BBQ Chicken Don Alex No. 1 Corp., No. 14 CV 5665, 2016 WL 1276417, at *3 (E.D.N.Y. Mar. 30, 2016) (citing Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 686 (S.D.N.Y. 2011) (collecting cases)); see also Padilla v. Sheldon Rabin, M.D., P.C., 176 F. Supp. 3d at 301 (observing that courts in the Second Circuit "have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA") (citations omitted).

As in the FLSA context, the NYLL defines "employee" broadly as "any individual employed or permitted to work by an employer in any occupation."  N.Y. Lab. L. § 651(5).  In this case, plaintiffs allege that at all relevant times, they were employed by defendants within the meaning of the FLSA and NYLL.  (Compl. ¶ 32).  The allegations set forth in plaintiffs' Complaint establish that plaintiffs were employees under the NYLL.  Plaintiffs also set forth factual allegations sufficient to demonstrate that, in addition to Alimentos Saludables, defendants Fructuoso Felipe Gonzalez and Luis Gonzalez were also plaintiffs' "employers" because they determined the wages and schedules of the employees.  (Id. ¶¶ 24, 26).  Moreover, plaintiffs claim that defendants willfully failed to pay minimum wage, overtime pay, or spread-of-hours pay under the FLSA and NYLL.  (Id. ¶¶ 102, 114).  Additionally, plaintiffs allege that defendants misappropriated any tips given by customers to plaintiffs (id. ¶ 110); failed to provide wage notices as required by the NYLL (id. ¶ 122); and failed to provide plaintiffs with wage statements when they were paid that listed the hourly rate of pay and overtime pay, as required by the NYLL.  (Id. ¶ 121).

Accordingly, based on these allegations, the Court finds that plaintiffs have adequately alleged the elements necessary to state a claim against defendants for various violations of the

NYLL.

C. <u>Statutes of Limitations</u>

1) <u>FLSA Limitations Period</u>

A cause of action accrues under the FLSA "on the regular payday immediately following the work period for which services were rendered and not properly compensated." <u>Tang v. Wing Keung Enters., Inc.</u>, 210 F. Supp. 3d 376, 394 (E.D.N.Y. 2016) (citation omitted). The FLSA generally provides a two-year statute of limitations within which a plaintiff must bring an action to enforce its provisions, but the period may be extended to three years if the relevant violation is willful. 29 U.S.C. § 255(a); <u>see</u> <u>Tang v. Wing Keung Enters.</u>, 210 F. Supp. 3d at 395 (citing <u>Parada v. Banco Indus. de Venezuela, C.A.</u>, 753 F.3d 62. 70 (2d Cir. 2014)).

The plaintiffs bear the burden of demonstrating that the violations were willful. <u>See Porter v. New York Univ. Sch. of Law</u>, 392 F.3d 530, 531 (2d Cir. 2004). "A violation is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" <u>Tang v. Wing Keung Enters.</u>, 210 F. Supp. 3d at 395 (quoting <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988)). Reckless disregard, in turn, is defined by regulation as a "failure to make adequate inquiry into whether [the employer's] conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.104. The showing required to establish such reckless disregard is low, for a plaintiff need only show "that the employer knew or had reason to know that it was or might have been subject to the FLSA." <u>Padilla v. Sheldon Rabin, M.D., P.C.</u>, 176 F. Supp. 3d 290, 300 (E.D.N.Y. 2016) (quoting <u>Eschmann v. White Plains Crane Serv., Inc.</u>, No. 11 CV 5881, 2014 WL 1224247, at *5 (E.D.N.Y. Mar. 24, 2014)).

Plaintiffs have simply alleged at the end of each cause of action that defendants' conduct "was willful." (<u>See</u> Compl. ¶¶ 131, 135, 140, 144, 148). Courts are divided on whether such

conclusory allegations are sufficient to establish the legal element of willfulness. Compare Lopez v. Yossi's Heimishe Bakery Inc., No. 13 CV 5050, 2015 WL 1469619, at *8 (E.D.N.Y. Mar. 30, 2015) (holding that plaintiffs' allegations that defendants failed to pay them wages as required under the FLSA and NYLL were merely conclusory and therefore insufficient to establish willfulness under the FLSA); Solis v. Tally Young Cosmetics, LLC, No. 09 CV 4804, 2011 WL 1240341, at *5 (E.D.N.Y. Mar. 4, 2011), report and recommendation adopted, 2011 WL 1240108 (E.D.N.Y. Mar. 30, 2011) (finding conclusory allegations insufficient to establish that the violations were willful), with Guaman v. Krill Contracting, Inc., No. 14 CV 4242, 2015 WL 3620364, at *5 (E.D.N.Y. June 9, 2015) (holding that plaintiff adequately pleaded that defendant's violations were willful where the complaint alleged that the defaulting defendants' failure to pay plaintiff overtime wages for hours worked beyond forty hours was willful); Herrera v. Tri-State Kitchen and Bath, Inc., No. 14 CV 1695, 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015) (finding that even such conclusory allegations, coupled with a defendant's default, can serve to establish willfulness for purposes of extending the statute of limitations). Here, the allegations in the Complaint as a whole support the otherwise conclusory allegations of willfulness and satisfy plaintiffs' burden.

The defendants may therefore be held liable under the FLSA for those violations which occurred on or after April 22, 2013—three years before the instant action was filed. Plaintiffs' remaining claims, which date back as far as April 2010, are outside the three year period and are therefore barred by the FLSA's statute of limitations.

2)  NYLL Limitations Period

Actions to recover damages stemming from violations under the NYLL must be brought within six years of the violation and do not require a showing of willfulness. NYLL § 663(3);

Pest v. Bridal Works of New York, Inc., No. 16 CV 1523, 2017 WL 3393967, at *13 (E.D.N.Y. July 27, 2017). Therefore, defendants may be held liable for any violations that occurred on or after April 22, 2010, six years before the instant lawsuit was filed.

III.    Damages

A.    Legal Standard

Having determined that the plaintiffs have established that the defendants constitute a "single employer" for purposes of the FLSA and the NYLL, and that all are liable for damages flowing from FLSA and NYLL violations occurring on or after April 22, 2013 and April 22, 2010, respectively, the Court now must determine whether plaintiffs have established their damages to a "reasonable certainty." See Gunawan v. Sushi Sake Restaurant, 897 F. Supp. 2d at 83. Although a defendant's failure to pay minimum wages and overtime violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted." Gonzales v. Gan Israel Pre-Sch., No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014). Courts will thus award damages under whichever statute would allow for greater recovery. Id.

As noted supra, upon entry of a default, defendants are deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986). However, plaintiffs must still prove damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an

admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court entertains a motion for default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that "[t]he Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(b). Courts possess discretion to determine the appropriate procedure by which to determine damages. United States v. Myers, 236 F. Supp. 3d 702, 709 (E.D.N.Y. 2017). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989). "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." United States v. Myers, 236 F. Supp. 3d at 709 (citations and quotation marks omitted).

Defendants are in default and have failed to make any submission regarding this action. Thus, plaintiffs' evidence on damages is undisputed. The Court concludes that plaintiffs' declarations and submissions as to the hours worked, rate of pay received, and other damages are sufficient bases upon which to calculate and recommend an award of damages, and that doing so is appropriate given that plaintiffs have not requested a formal hearing. It is therefore unnecessary to hold a formal hearing to take additional evidence.

1) <u>Burden of Proving FLSA Damages</u>

Under the FLSA, an employee-plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated." <u>Santillan v. Henao</u>, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946), <u>superseded on other grounds by</u> 29 U.S.C. § 251, <u>et seq</u>).  The Supreme Court in <u>Anderson v. Mt. Clemens Pottery Co.</u> noted, however, that "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy."  328 U.S. at 687.  By defaulting, defendants have "deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages." <u>Santillan v. Henao</u>, 822 F. Supp. 2d at 294.  The Supreme Court has held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  <u>Tran v. Alphonse Hotel Corp.</u>, 281 F.3d 23, 31 (2d Cir. 2002) (quoting <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. at 687), <u>overruled on other grounds</u>, <u>Slayton v. American Express Co.</u>, 460 F.3d 216 (2d Cir. 2006).

In light of this holding, courts in this Circuit have concluded that where a defendant-employer defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone." <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act." <u>Boyke v. Superior Credit Corp.</u>, No. 01 CV 0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29 U.S.C. § 211(c), which requires that an employer "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and

practices of employment"); <u>see also</u> <u>Park v. Seoul Broad. Sys. Co.</u>, No. 05 CV 8956, 2008 WL

619034, at *7 (S.D.N.Y. Mar. 6, 2008) (holding that courts should apply a "special burden-

shifting standard" where employers fail to comply with this statutory duty of record keeping).

### 2) Burden of Proving NYLL Damages

New York law also requires that employers keep various, detailed employment records.

Like the FLSA, the NYLL requires that employers maintain employment records relating to

employees' rates of pay, hours, and dates of work, among other information. <u>See, e.g.</u>, N.Y.

Lab. L. § 195(1)(a) (requiring an employer to "provide his or her employees, in writing . . . a

notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week,

salary, piece, commission, or other allowances"); N.Y. Lab. L. § 195(2) (requiring employers to

notify employees prior to changing the day on which wages are paid); N.Y. Lab. L. § 195(3)

(employers must "furnish each employee with a statement with every payment of wages, listing

. . . the dates of work . . . gross wages; deductions; allowances, if any claimed as part of the

minimum wage; and net wages"); N.Y. Lab. L. § 195(4) (requiring employers to "establish,

maintain[,] and preserve for not less than three years payroll records showing the hours worked,

gross wages, deductions and net wages for each employee").  Thus, where the defendant has

failed to maintain proper records, the burden of proving that plaintiff was paid properly falls on

the employer, upon whom the statute imposes a duty to maintain such information. <u>See</u> <u>Marin v.</u>

<u>JMP Restoration Corp.</u>, No. 09 CV 1384, 2012 WL 4369748, at *6 (E.D.N.Y. Aug. 24, 2012)

(explaining that "[t]o determine NYLL overtime damages, courts use the same burden-shifting

scheme employed in FLSA actions").

Thus, under both federal and state laws, defendant-employers have an obligation to keep

records, and by virtue of defendants' default, plaintiff's "recollection and estimates of hours

worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL

33412, at *3 (S.D.N.Y. Jan. 7, 2004); accord Chao v. Vidtape, 196 F. Supp. 2d 281, 293-94

(E.D.N.Y. 2002). Courts have applied this same presumption of correctness to a plaintiff's

recollection of wages earned. See, e.g., Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 84.

Here, defendants did not appear and therefore cannot meet their burden by providing the

records they are required to maintain. The only evidence available to support plaintiffs' claims is

plaintiffs' own statements in their Declarations. Given that defendants have not appeared in this

action to challenge plaintiffs' claims, the Court bases its recommendation on plaintiffs' evidence

as to hours worked and wages paid by defendants.

### B. Minimum Wage Claims

An employer who fails to meet minimum wage obligations under the FLSA and the

NYLL "shall be liable to the employee or employees affected in the amount of their unpaid

minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C.

§ 216(b); see 12 N.Y.C.R.R. § 143-1.3. Ms. Martinez alleges that between April 2010 and April

2016 she did not receive the statutorily prescribed minimum wage. (Compl. ¶¶ 49-53). Ms.

Mosso also alleges that between April 15, 2010 and November 2014, and between March 2016

and April 19, 2016, she did not receive the statutorily prescribed minimum wage. (Id. ¶¶ 67-72).

Ms. Lopez also alleges that between April 15, 2011 and April 19, 2016, she did not receive the

statutorily prescribed minimum wage. (Id. ¶¶ 88-90).

Under the NYLL, the applicable minimum hourly wage rates for the time periods at issue

in this matter were as follows: (1) $7.25 an hour for the period from April 22, 2010[7] to

---

[7] The Court considers the NYLL minimum wage rate from April 22, 2010 onward
because plaintiffs may only recover beginning on April 22, 2010, six years before the instant

December 30, 2013; (2) $8.00 an hour for the period from December 31, 2013 to December 30, 2014; (3) $8.75 an hour for the period from December 31, 2014 to December 30, 2015; and (4) $9.00 for the period from December 31, 2015 to April 19, 2016, when plaintiffs' employment terminated. N.Y. Lab. L. § 652(1). Under the FLSA, the applicable minimum hourly wage rate was $7.25 from July 24, 2009 onward. 29 U.S.C. § 206(1). Both statutes specify that, where the other prescribes a higher minimum wage rate, the statute containing the higher wage rate shall control. See 29 U.S.C. § 218(a); N.Y. Lab. L. § 652(1). In this case, the wage rates provided by the NYLL were higher throughout plaintiffs' employment; thus, the Court uses the rates prescribed under the NYLL as the applicable minimum wage rate for each relevant period.

In her Declaration, Ms. Martinez alleges that she worked for defendants from January 2002 until April 19, 2016. (Martinez Decl. ¶ 6). Martinez also claims that between April 2010 and September 15, 2015, she worked approximately 61.5 hours per week; between September 16, 2015 and March 31, 2016, she worked approximately 51.5 hours per week; and, between April 1, 2016 and April 19, 2016, she worked about 46.5 hours per week. (Id. ¶¶ 12-14). Martinez also claims that between April 2010 and April 2015, she was paid a weekly rate of $475.00 and that between April 2015 and April 19, 2016, she was paid a weekly rate of $525.00. (Id. ¶¶ 16-17).

Under New York regulations, the "regular rate of pay" for employees in the hospitality industry, which includes restaurant employees, see N.Y. C.R.R. 146-3.1, is calculated by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work

---

lawsuit was filed. See N.Y. Lab. L, § 663(3).

week." (N.Y.C.R.R. 146-3.5).[8] Thus, the Court finds that Martinez's regular hourly rate of pay was $11.88 during the period from April 2011 through April 2015 and $13.13 during the period from April 2015 through April 19, 2016. The Court divided Martinez's weekly pay of $475.00 and $525.00 by 40 hours, the lesser of 40 hours and the actual number of hours Martinez worked each week. Since the minimum wage rate under the NYLL never exceeded the rate of $11.88 per hour during these periods, the Court concludes that Martinez was paid above the minimum wage while employed by defendants. See N.Y. Lab. Law § 652 (1).

In her Declaration, Ms. Mosso states that she worked for defendants from approximately April 2003 until November 2014, and, from March 2016 until on or about April 19, 2016. (Mosso Decl. ¶ 8). She further states that from April 2010 to November 2014, she worked for about 62 hours per week, and that from March 15, 2016 to April 19, 2016, she worked for about 50 hours per week. (Id. ¶¶ 13-14). Moreover, Mosso claims that from April 2010 until on or about January 15, 2016,[9] she was paid a weekly wage of $375.00, which increased to $475.00 on January 16, 2013, and again to $500.00 on March 15, 2016. (Id. ¶¶ 16-18). Thus, the Court calculates Mosso's regular rate of pay to be $9.38 between April 15, 2010 and January 15, 2013, $11.88 between January 16, 2013 and November 15, 2014, and $12.50 between March 15, 2016 and April 19, 2016. Since the minimum wage rate under the NYLL never exceeded the rate of $9.38 per hour during these periods, the Court concludes that Mosso was paid at or above the minimum wage while employed by defendants.

---

[8] By contrast, the regular rate of pay for employees in non-hospitality industries is found by dividing the total amount of weekly pay by the actual number of hours worked.

[9] Although plaintiff Mosso has not specified in her Declaration when her wage rate changed, the chart summarizing her damages indicates that Mosso's wage rate changed on January 16, 2013 and March 15, 2016. (Faillace Decl., Ex. K at 1). The Court adopts these dates in making its calculations.

In her Declaration, Ms. Lopez alleges that she worked for defendants from approximately 2004 to 2007, again from 2008 to 2009, and finally from April 2011 to April 19, 2016. (Lopez Decl. ¶ 6). Lopez claims that during her employment at Alimentos she was paid a weekly wage of $420.00 during the entire time she worked for defendants. (Id. ¶ 14). She also alleges that she worked 61.5 hours per week throughout that period. (Id. ¶ 12). Accordingly, Lopez's regular rate of pay was $10.50. Since the minimum wage rate under the NYLL never exceeded the rate of $10.50 per hour during these periods, the Court concludes that Lopez was paid above the minimum wage while employed by defendants.

Despite the allegations in the Complaint that plaintiffs are owed unpaid minimum wages, the calculations in plaintiffs' default papers appear to acknowledge that plaintiffs are not entitled to damages for those claims. For example, plaintiffs' damages chart shows that, for each relevant period, the plaintiffs' "calculated regular rate of pay" exceeded the statutory minimum under the NYLL. (See Damages Chart, Faillace Decl., Ex. K). In his Declaration, Mr. Faillace explains that the chart calculates the plaintiffs' "[]minimum wage damages." (See Faillace Decl. ¶ 49). In explaining the legal basis for the damages calculations, he sets forth the applicable minimum wage under both the FLSA and NYLL (see id. ¶¶ 54-55), but only uses that information to present calculations of overtime wages owed. (Id. ¶¶ 59-71). Despite the boilerplate allegations in both the Complaint and Mr. Faillace's Declaration, plaintiffs' Declarations and damages calculations appear to acknowledge that they are not entitled to an award of damages for unpaid minimum wage claims.[10]

---

[10] The Court observes that other courts both in this District and in the Southern District of New York have expressed concerns over similar instances where boilerplate allegations contained in filings by Mr. Faillace and his firm turn out to be unsupported by the evidence. See Sanchez v. I&A Rest. Corp., No. 14 CV 726, 2017 WL 2537814, at *1 n.2 (S.D.N.Y. May 22,

Plaintiffs' sworn Declarations demonstrate that they were, at all relevant times, paid at or above the prescribed minimum wage. Accordingly, the Court respectfully recommends that plaintiffs not be awarded any damages for unpaid minimum wages.

## C. Overtime Claims

Plaintiffs Martinez, Mosso, and Lopez also allege violations of the FLSA and NYLL based on defendants' failure to pay overtime for any hours worked over 40 in a week.

Under both the FLSA and NYLL, an employee is entitled to overtime pay, calculated at one and one-half times the employee's regular hourly rate, for hours worked in excess of 40 in one work week. See 29 U.S.C. § 207(a)(2)(C); N.Y. Lab. L. § 663(3); 12 N.Y. C.R.R. § 146-1.4. The method for calculating overtime under both the FLSA and NYLL is the same. Even if the plaintiffs are owed overtime wages in violation of both the FLSA and the NYLL, they are not entitled to recover double damages. See Janus v. Regalis Constr., Inc., No. 11 CV 5788, 2012 WL 3878113, at *7 (E.D.N.Y. July 23, 2012), report and recommendation adopted, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

According to Martinez's Declaration, she was employed by Alimentos from January 2002 until April 19, 2016 and received a flat rate of $475.00 per week, which increased to $525.00 per week in April 2015. (Martinez Decl. ¶¶ 6, 16-17). Martinez alleges that while employed by defendants, she worked between 46.5 and 61.5 hours per week and never received overtime wages. (Id. ¶¶ 12-14, 18-21). Thus, given that defendants have declined to participate

---

2017) (echoing the trial judge's "concern that counsel either did not adequately investigate the viability of Plaintiff's FLSA claims, or asserted and proceeded on those claims primarily for [an improper] purpose"); Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (explaining that plaintiff was not entitled to minimum wage damages after entry of default because his evidence demonstrated that he "never worked at a rate below the minimum wage requirement"). See also supra at 26-30.

in these proceedings and plaintiffs' statements as to their wages and hours worked have not been challenged, the Court credits Martinez's statements, see Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 84, and finds that Martinez is entitled to recover overtime wages under the NYLL for the entire period of her employment, going back to April 22, 2010.

According to Mosso's Declaration, she was employed by defendants from April 2003 to November 2014 and received a flat rate of $375.00 per week, which then increased to $475.00 per week in January 2013. (Mosso Decl. ¶¶ 8, 16-17). Mosso was also employed by defendants from March 2016 to April 19, 2016, and received a flat rate of $500.00 per week during that second period of employment. (Id. ¶¶ 8, 18). Mosso alleges that while employed by defendants, she worked between 50 and 62 hours per week. (Id. ¶¶ 13-14, 18-21). Thus, the Court credits her testimony and finds that Mosso is entitled to recover overtime wages under the NYLL for the entire period of her employment, starting on April 22, 2010.

Lopez claims that she was employed by defendants from April 15, 2011 until April 19, 2016, and received a wage of $420.00 per week. (Lopez Decl. ¶ 14; see Faillace Decl., Ex. K). Lopez alleges that while employed by defendants, she worked 61.5 hours per week and never received overtime wages. (Id. ¶¶ 12, 17). Thus, the Court credits her testimony and finds that Lopez is entitled to recover overtime wages under the NYLL for the entire period of her employment.

The Code of Federal Regulations explains that the term "regular rate of pay" should be interpreted to mean the higher of the employee's hourly rate and minimum wage under either state or federal law: "Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such

applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed." 29 C.F.R. § 778.5; see Santana v. Latino Express Restaurants, Inc., No. 15 CV 4934, 2016 WL 4059250, at *4 (S.D.N.Y. July 28, 2016) (calculating overtime wages due to plaintiff under both the FLSA and NYLL by using the state minimum wage rate: "During Plaintiff's employment at the Restaurant, the New York minimum wage rate was $8.75 per hour. Plaintiff's overtime rate was one and one-half times her normal wage rate of $8.75, or $13.125"); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 126 (E.D.N.Y. 2011) (explaining that "[u]npaid overtime wages are calculated by multiplying the New York minimum wage rate or the FLSA minimum wage rate, whichever is higher, by 0.5 to determine the additional amount owed per hour over 40 hours worked").

The FLSA provides that overtime pay should be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater. See 29 U.S.C. § 207; 29 C.F.R. § 778.107. New York law also requires that employees be compensated at "one and one-half times the employee's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA. 12 N.Y. C.C.R.R. § 142-2.2. New York regulations allow "premium pay" for a contractual weekly period to be credited towards overtime pay due. N.Y. C.C.R.R. § 146-3.5. However, since defendants have not answered, the Court has no basis to determine that there was a "premium pay" contractual arrangement that would allow the Court to credit any portion of plaintiffs' weekly pay towards their overtime wages owed.

As explained above, Martinez was paid a regular hourly rate of $11.88 from April 22, 2010 to April 15, 2015, which increased to $13.13 from April 16, 2015 to April 19, 2016. Thus,

between April 22, 2010 and April 19, 2016, Martinez's regular rate of pay was above the minimum wage rate of both the FLSA and the NYLL. Her overtime rate of pay must therefore be calculated based on one and a half times her regular hourly rate of pay rather than the minimum wage.

Martinez alleges that from April 2010 until September 2015, she worked an average of 61.5 hours per week. (Martinez Decl. ¶ 12). From September 2015 until March 2016, she worked an average of 51.5 hours per week. (Id. ¶ 13). Finally, from April 1, 2016 until April 19, 2016, Martinez worked an average of 46.5 hours per week. (Id. ¶ 14). Crediting Martinez's testimony, the Court finds that plaintiff worked 21.5 hours per week in overtime from April 2010 through September 2015, 11.5 hours per week in overtime from September 2015 through March 2016, and 6.5 hours per week in overtime from April 1, 2016 through April 19, 2016. Thus, the Court has determined Martinez's overtime wages while employed at Alimentos by multiplying the number of unpaid overtime hours each week by the number of weeks plaintiff worked and the applicable overtime rate of pay.

Plaintiff Mosso received an hourly rate of $9.38 from April 22, 2010 until January 15, 2013, which increased to $11.88 from January 16, 2013 to November 15, 2014, and then increased again to $12.50 from March 1, 2016 to April 19, 2016. Between April 22, 2010 and April 19, 2016, Mosso's regular rate of pay was above the minimum wage rate of both the FLSA and the NYLL. Thus, during these periods, Mosso's overtime rate of pay is based on one and a half times her regular rate of pay.

Mosso testified in her Declaration that she worked 62 hours per week from April 2010 through November 2014 and 50 hours per week from March 2016 through April 19, 2016. (Mosso Decl. ¶¶ 13-14). Crediting her testimony, the Court finds that plaintiff put in 22 hours of

overtime per week from April 2010 through November 2014 and 10 hours of overtime per week from March 2016 through April 19, 2016, for which she was entitled to receive overtime compensation. Thus, the Court has determined Mosso's overtime wages while employed at Alimentos by multiplying the number of unpaid overtime hours each week by the number of weeks plaintiff worked and the applicable overtime rate of pay.

Plaintiff Lopez received a wage of $10.50 per hour from April 15, 2011 to April 19, 2016, during which time she worked 61.5 hours per week. (Lopez Decl. ¶¶ 12, 14). Crediting Lopez's testimony, the Court finds that plaintiff Lopez worked 21.5 hours of overtime per week. During this period, Lopez's rate was above the minimum wage rate of both the NYLL and the FLSA. Thus, during this period Lopez's overtime rate of pay is based on one and a half times her regular rate of pay. The amount of Lopez's overtime wages owed was determined by multiplying the 21.5 hours of overtime per week by her applicable overtime rate of pay.

In recommending these rates, the Court has considered that minimum wage rates under the NYLL increased at various times during this period while the rate applicable under the FLSA remained at $7.25 per hour. Nevertheless, because the minimum wage rate was always less than the regular wage rate paid to the plaintiffs, the Court has calculated overtime wages based on their regular rates of pay. See 12 N.Y. C.C.R.R. § 142-2.2 (establishing the overtime wage rate "of one and one-half times the employee's regular rate"). Using the time periods and rates of pay set forth in plaintiffs' Declarations, plaintiffs are entitled to damages for unpaid overtime wages as follows:

**Table 1a: Martinez's Overtime Wages**

| Period | Hourly Wage Rate Paid | Overtime Wage Rate | Hours of Overtime Per Week | Number of Weeks in Period | Overtime Owed for the Period |
|---|---|---|---|---|---|
| 4/22/10 – 4/15/15 | $11.88 | $17.82 | 21.5 | 259 | $99,230.67 |
| 4/16/15 – 9/15/15 | $13.13 | $19.70 | 21.5 | 22 | $9,315.74 |
| 9/16/15 – 3/31/16 | $13.13 | $19.70 | 11.5 | 28 | $6,341.79 |
| 4/1/16 – 4/19/16 | $13.13 | $19.70 | 6.5 | 3 | $384.05 |
| | | | | Total Overtime Owed: | **$115,272.25** |

**Table 1b: Mosso's Overtime Wages**

| Period | Hourly Rate Paid | Overtime Rate of Pay | Hours of Overtime Per Week | Number of Weeks in Period | Overtime Owed for the Period |
|---|---|---|---|---|---|
| 4/22/10 – 1/15/13 | $9.38 | $14.07 | 22 | 143 | $44,264.22 |
| 1/16/13 – 11/15/14 | $1.88 | $17.82 | 22 | 95 | $37,243.80 |
| 3/1/16 – 4/19/16 | $12.50 | $18.75 | 10 | 7 | $1,312.50 |
| | | | | Total Overtime Owed: | **$82,820.52** |

**Table 1c: Lopez's Overtime Wages**

| Period | Hourly Rate Paid | Overtime Rate of Pay | Hours of Overtime Per Week | Number of Weeks in Period | Overtime Owed |
|---|---|---|---|---|---|
| 4/15/11 – 4/19/16 | $10.50 | $15.75 | 21.5 | 261 | $88,381.13 |
| | | | | Total Overtime Owed: | **$88,381.13** |

Accordingly, the Court respectfully recommends that plaintiff Martinez be awarded $115,272.25 in unpaid overtime wages; plaintiff Mosso be awarded $82,820.52 in unpaid overtime wages; and plaintiff Lopez be awarded $88,381.13 in unpaid overtime wages.

D.  NYLL Spread of Hours Pay

Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours.  12 N.Y. C.C.R.R. § 146-1.6(a).  That compensation is calculated at the applicable minimum wage "regardless of a given employee's regular rate of pay."  Id. § 146-1.6(d).

Plaintiff Martinez alleges that between April 2010 and September 2015, she worked over ten hours a day, three days a week.  (Compl. ¶ 45; Martinez Decl. ¶ 12).  Martinez also claims that between September 2015 and March 2016, she worked over ten hours a day, twice a week. (Compl. ¶ 46; Martinez Decl. ¶ 13).  Plaintiff Mosso claims that between April 2010 and November 2014, she worked over ten hours a day, four days a week.  (Compl. ¶ 67; Mosso Decl. ¶ 13).  Plaintiff Lopez alleges that between April 2011 and April 2016, she worked over ten hours a day, three days a week.  (Compl. ¶ 88; Lopez Decl. ¶ 14).

As defendants have failed to introduce any evidence to the contrary, the Court has credited the undisputed allegations contained in the Complaint, plaintiffs' Declarations, and documents filed in support of the motion for default to calculate spread of hours damages.  To determine the spread of hours pay owed to plaintiffs for each period, the Court multiplied the minimum wage rate under the NYLL for the relevant period by the number of days each respective plaintiff worked over ten hours and then multiplied that figure by the number of weeks in the period.

The Court therefore respectfully recommends that plaintiffs be awarded spread of hours wages in the following amounts:

**Table 2a: Martinez's Spread of Hours Wages**

| Period | NYLL Min. Wage | No. of Days Worked Over 10 Hours | No. of Weeks in Period | Total SOH Owed for Period |
|---|---|---|---|---|
| 4/22/10 – 12/30/13 | $7.25 | 3 | 192 | $4,176.00 |
| 12/31/13 – 12/30/14 | $8.00 | 3 | 52 | $1,248.00 |
| 12/31/14 – 9/15/15 | $8.75 | 3 | 37 | $971.25 |
| 9/16/15 – 12/30/15 | $8.75 | 2 | 15 | $262.50 |
| 12/31/15 – 3/31/16 | $9.00 | 2 | 13 | $234.00 |
| 4/1/16 – 4/19/16 | $9.00 | 0 | 3 | $0.00 |
| | | | Total Spread of Hours Pay Owed: | **$6,891.75** |

**Table 2b: Mosso's Spread of Hours Wages**

| Period | NYLL Min. Wage | No. of Days Worked Over 10 Hours | No. of Weeks in Period | Total SOH Owed for Period |
|---|---|---|---|---|
| 4/22/10 – 12/30/13 | $7.25 | 4 | 192 | $5,568.00 |
| 12/31/13 – 11/15/14 | $8.00 | 4 | 46 | $1,472.00 |
| 3/1/16 – 4/19/16 | $9.00 | 0 | 7 | $0.00 |
| | | | Total Spread of Hours Pay Owed: | **$7,040.00** |

**Table 2c: Lopez's Spread of Hours Wages**

| Period | NYLL Min. Wage | No. of Days Worked Over 10 Hours | No. of Weeks in Period | Total SOH Owed for Period |
|---|---|---|---|---|
| 4/15/11 – 12/30/13 | $7.25 | 3 | 141 | $3,066.75 |
| 12/31/13 – 12/30/14 | $8.00 | 3 | 52 | $1,248.00 |
| 12/31/14 – 12/30/15 | $8.75 | 3 | 52 | $1,365.00 |
| 12/31/15 – 4/19/16 | $9.00 | 3 | 16 | $432.00 |
| | | | Total Spread of Hours Pay Owed: | **$6,111.75** |

Accordingly, the Court respectfully recommends that plaintiff Martinez be awarded a total of $6,891.75 in unpaid spread of hour wages; plaintiff Mosso be awarded a total of $7,040.00 in unpaid spread of hour wages; and plaintiff Lopez be awarded a total of $6,111.75 in unpaid spread of hour wages.

E. Required Notifications Under the NYLL

Plaintiffs also seek damages due to defendants' alleged failure to issue written pay stubs or notices of plaintiffs' rate of pay, in violation of N.Y. Lab. L. §§ 195 and 198. (Compl. ¶¶ 121-22). Plaintiffs claim that they are entitled to damages for violations of each provision of Section 195, specifically Sections 195(1)(a) and 195(3), pursuant to Sections 198(1-b) and 198(1-d) of the NYLL.

1) Rate of Pay Notifications Under NYLL § 195(1)(a)

Prior to April 9, 2011, Section 195(1) of the NYLL required an employer to "notify his or her employees, in writing, at the time of hiring of the rate of pay and of the regular pay day designated by the employer." NYLL § 195(1), 2009 N.Y. Laws ch. 270 § 1 (effective Oct. 26, 2009) (amended by 2010 N.Y. Laws ch. 564 § 3). For employees eligible to receive overtime compensation, the notices were required to state both the "regular hourly rate and overtime rate of pay." Id. Prior to April 9, 2011, the NYLL did not provide any remedy for employees who did not receive the required notice.

Effective April 9, 2011, Section 195(1) was amended to add a subsection (a), which provides that an employer must:

> [P]rovide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or

38

rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. . . . For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay.

NYLL § 195(1)(a), 2010 N.Y. Laws ch. 564 § 3 (effective Apr. 9, 2011) (amended by 2014 N.Y. Laws ch. 537 § 1); <u>see also</u> <u>Franco v. Jubilee First Ave. Corp.</u>, No. 14 CV 7729, 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016).

At the same time Section 195(1) was amended, the legislature also amended Section 198(1-b) to provide that if an employee is not provided with the notice at the time of hire as required by Section 195(1), Section 198(1-b) permits the employee to recover statutory damages for the violation. NYLL § 198(1-b), 2010 N.Y. Laws ch. 564 § 7 (effective Apr. 9, 2011) (amended by 2014 N.Y. Laws ch. 537 § 2). Thus, effective on April 9, 2011, an employee who did not receive a notice complying with Section 195(1)(a) of the NYLL at the time of hire was permitted to recover statutory damages of $50 per week that the violations continued, up to a total of $2,500. <u>Id.</u>; <u>see also</u> <u>Franco v. Jubilee First Ave. Corp.</u>, 2016 WL 4487788, at *13. In 2014, Section 198(1-b) was amended to increase the amount of statutory damages available for Section 195(1)(a) violations to $5,000 and to rescind the requirement that the notice be provided annually on or before February 1 of each subsequent year. Thus, since February 27, 2015, when the amendment became effective, this notice need only be provided at the time of

hiring.  NYLL § 195(1)(a), 2014 N.Y. Laws ch. 537 § 1 (effective Feb. 27, 2015).

Plaintiffs argue that they are entitled to damages for defendants' violations of Sections 195(1) and 195(3).  (See Compl. ¶¶ 121-22; Martinez Decl. ¶¶ 26-28; Mosso Decl. ¶¶ 26-28; Lopez Decl. ¶¶ 22-24).

Since April 9, 2011, Section 198 of the NYLL has provided for enforcement of Sections 195(1) and 195(3) by allowing an aggrieved employee to collect a penalty for an employer's violation of those sections.  As to violations of the notice requirement of Section 195(1), Section 198 at all relevant times has provided for a penalty if an employer fails to provide the notice "within ten business days of [the employee's] first day of employment."  N.Y. Lab. L. § 198(1-b).  Section 198 does not, however, appear to provide for a monetary award to an employee for violations of the subsequent annual notices also required by Section 195.  See id. §§ 198(1-b), 195(1)(a).  Indeed, several courts have held that there is no private cause of action for employees to enforce the annual notice requirement; under Section 198, only the commissioner of the New York Department of Labor, on an employee's behalf, may seek a monetary award against an employer who violates the annual notice requirement.  See, e.g., Krupinski v. Laborers E. Region Org. Fund, No. 16 CV 9923, 2017 WL 3267764, at *6 (S.D.N.Y. July 31, 2017) (explaining that "Section 198 provides only the Commissioner of Labor, not employees themselves, with a cause of action to enforce [Section 195(1)(a)]"); Yuquilema v. Manhattan's Hero Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 26, 2014) adopted by 2014 WL 5039428 (Sept. 30, 2014) (observing that "[o]ddly, the NYLL extends this private cause of action to employees whose employer fails to provide the initial notice at their hire, but not for subsequent failures to furnish the annual notice in following years").

As a result, employees hired after April 9, 2011 may sue for damages under Section

198(1-b) if they were not provided with the initial wage notice upon hiring as required by Section 195(1)(a), but longer term employees, hired before 2011, have no right to recover damages even though their employer failed to provide annual notices in violation of the statute. It seems profoundly unfair for the legislature "to confer a private right of action upon new employees, while depriving existing employees of the same right." Cuzco v. F & J Steaks 37th Street LLC, No. 13 CV 1859, 2014 WL 2210615, at *4 (S.D.N.Y. May 28, 2014). It is perhaps for this reason that the courts have not been uniform in their interpretation of Section 198(1-b). See Severino v. 436 W. L.L.C., No. 13 CV 3096, 2015 WL 12559893, at *9 (S.D.N.Y. Mar. 19, 2015). However, based on the plain text of the statute, and given the legislature's subsequent enactment of the revision in 2014 that removes the annual notice requirement, the Court concludes that Section 198(1-b) does not provide for damages for annual notice violations.

Given that the plaintiffs began employment at different dates, the Court must analyze individually each plaintiff's eligibility for penalties under Section 198.

Ms. Martinez was employed by the defendants continuously from January 2002 until on or about April 19, 2016. (Martinez Decl. ¶ 6). She asserts that she was never provided with any written information regarding her rate of pay, the number of hours she worked, or deductions or credits to her paycheck, nor was she ever provided with information regarding minimum wage requirements. (Martinez Decl. ¶¶ 26-28). Although she seeks compensation for the defendants' failure to provide her with the notice required by Section 195(1), Section 198 had not been amended to provide monetary penalties for Section 195 violations at the time she was hired and, as discussed above, does not provide a penalty for violations of the subsequent annual notice requirement. The Court therefore recommends that Martinez not be awarded damages for defendants' violations of Section 195(1) of the NYLL.

Ms. Mosso was employed by the defendants twice, first from April 2003 until November 2014, and again from March 2016 until on or about April 19, 2016. (Mosso Decl. ¶ 8). She too claims that she was never provided with any written information regarding her rate of pay, the number of hours she worked, or deductions from or credits to her paycheck, nor was she ever provided with information regarding minimum wage requirements. (Mosso Decl. ¶¶ 26-28). She is not entitled to damages for the violation of Section 195(1) during her first term of employment because the provision allowing for damages had not been enacted when she was first employed. However, by the time she was rehired in March 2016, the damages provision had been enacted. See N.Y. Lab. L. § 198(1-b) (effective Jan. 19, 2016). At that time, Section 198(1-b) provided that an employee who had not been given the required notice after ten business days of her first day of employment may recover "fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars[.]" Id.

Although a Section 195(1)(a) violation occurs if an employer does not provide the requisite notice "upon hiring," see N.Y. Lab. L. § 195(1)(a), Section 198(1-b) gives the employer ten business days to comply. Thus, under the plain language of Section 198(1-b), an employee is not entitled to collect damages for a violation of Section 195(1)(a) until after ten business days have passed and the employer still has not provided the requisite notice. However, after ten business days have passed and an employee becomes entitled to damages, such damages should be calculated from the date of the Section 195(1)(a) violation, i.e., the date of hiring. Thus, Mosso is entitled to fifty dollars for each day she worked from March 1, 2016, when she was hired for a second time, through April 19, 2016. During this brief second period of employment, Mosso worked six days per week (see Mosso Decl. ¶ 14), for a total of 44 workdays between

March 1, 2016 and April 19, 2016.  She is therefore entitled to fifty dollars per day for 44 days, or $2,200.00.

Ms. Lopez worked for the defendants three separate times:  from 2004 until 2007, from 2008 until 2009, and from April 15, 2011 until April 19, 2016.  (Lopez Decl. ¶ 6; Faillace Decl., Ex. K).  She is not entitled to damages for Section 195(1) violations for the first two periods both because there was no statutory provision providing for such an award at those times and because those periods of employment are not at issue in this litigation.  When she began her third period of employment on April 15, 2011, Section 198(1-b) provided for "fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of two thousand five dollars[.]"  N.Y. Lab. L. § 198(1-b) (effective Apr. 9, 2011).[11]  Given the length of Ms. Lopez's employment, which greatly exceeded 50 weeks, she is entitled to the full statutory maximum in place at the time of the violation, which was $2,500.00.

### 2) Wage Statements Under NYLL § 195(3)

Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. L. § 195(3).

---

[11] Lopez has not argued for retroactive application of the 2014 amendment to Section 198(1-b), which provides for damages in the amount of $50 per workday, up to a maximum of $5,000.00.  See N.Y. Lab. L. § 198(1-b) (effective Feb. 27, 2015).  New York courts disfavor retroactive operation of statutes and require a clear expression of legislative intent to justify retroactivity.  Gold v. New York Life Ins. Co., 730 F.3d 137, 143 (2d Cir. 2013).  Courts determine legislative intent by examining the text of the legislation itself and, if the text is unclear, then to the legislative history.  Id.  The text of the amendment makes no reference to retroactivity, and the Court has not discerned any such intent in the legislative history.  See, e.g., N.Y. Bill Jacket, A.B. 8106-C, ch. 537.  The Court therefore concludes that the amendment should not be given retroactive effect.

Section 198 also requires individualized calculations of each plaintiff's damages for violations of Section 195(3). From April 9, 2011 through February 26, 2015, an employee could recover $100 for each work week that the employer violated Section 195(3) by failing to provide wage notices, up to a statutory maximum of $2,500.00. <u>See</u> N.Y. Lab. L. § 198(1-d) (effective April 9, 2011). From February 27, 2015 onward, an employee could recover $250 for each work day that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00. <u>See</u> N.Y. Lab. L. § 198(1-d) (effective February 27, 2015).

It is clear that both Ms. Martinez and Ms. Lopez worked more than 20 work days after February 27, 2015, and each is therefore entitled to the maximum award of $5,000.00 for violations of Section 195(3).

Ms. Mosso has established that defendants' violations of Section 195(3) continued for more than 25 work weeks during the period from April 9, 2011, when Section 198 was amended to provide a penalty, and November 2014, when she concluded her first period of employment. Her damages calculated at $100 per work week would exceed the statutory cap, and she is therefore entitled to the maximum amount of $2,500.00 for that period.

Mosso was also employed by the defendants for her second period of employment from March 2016 through April 19, 2016, during which period defendants also violated Section 195(3); however, Section 198(1-d) was amended by that time so that she is entitled to $250 per work day that the defendants were in violation of Section 195(3), up to a maximum of $5,000.00. <u>See</u> N.Y. Lab. L. § 198(1-d) (January 18, 2016). As mentioned previously, Mosso put in 44 work days during her second period of employment. Calculating her damages at $250 per work day would exceed the statutory cap, and she is therefore entitled to the statutory maximum of $5,000.00 for defendants' violations of Section 195(3). The Court has been unable to locate any

cases discussing whether Section 198(1-d)'s $5,000.00 limit on damages for Section 195(3) violations also serves to cap any cumulative award for violations of Section 195(3) in prior periods of employment, and plaintiffs' materials request only $2,500 under the earlier version of the statute.  (See, e.g., Faillace Decl. ¶¶ 90-91).

In the absence of guidance from other courts, the Court turns to the text of Section 198(1-d), which provides that damages shall be awarded "for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." N.Y. Lab. L. § 198(1-d).  The language of the statute directs courts to award damages based on the number of "work day[s]" (or, in previous iterations, "work week[s]," see N.Y. Lab. L. § 198(1-d) (effective Apr. 9, 2011)).  See id.  It makes no reference to other periods of employment, and it therefore does not matter, for purposes of the statutory cap on damages, whether the employee remained employed throughout an entire period or left and returned to a job several times.  That makes sense, for otherwise an employee who left a violating employer only to return later might recover more in damages than another employee who, by virtue of remaining employed by the violating employer for a longer time, would be entitled to less in damages despite incurring more of the harm proscribed by the statute.  The Court therefore concludes that Mosso may only recover $5,000.00 in total for the violations of Section 195(3) throughout the entire time period covered by this litigation.

### 3) Summary of Recommended Damages for Violations of NYLL § 195

The Court therefore respectfully recommends that, for defendants' violations of Section 195 of the NYLL, Ms. Martinez be awarded $5,000, Ms. Mosso be awarded $7,200, and Ms. Lopez be awarded $7,500, as summarized below:

|  | **Martinez** | **Mosso** | **Lopez** |
|---|---|---|---|
| Violations of § 195(1)(a) | $0.00 | $2,200.00 | $2,500.00 |
| Violations of § 195(3) | $5,000.00 | $5,000.00 | $5,000.00 |
| **Total** | **$5,000.00** | **$7,200.00** | **7,500.00** |

F.  Unlawfully Retained Gratuities[12]

Plaintiffs seek damages in the form of gratuities that they claim were wrongfully

withheld by defendants.  Specifically, plaintiffs claim that defendants retained tips left by

customers and, after a period of about three weeks, would then pay plaintiffs a sum of $5 per

day.  (Compl. ¶¶ 58, 79, 97; Martinez Decl. ¶ 25; Mosso Decl. ¶ 25; Lopez Decl. ¶ 21).

However, plaintiffs fail to explain in their Declarations or the Complaint how an award to

compensate for those retained gratuities should be calculated, and it appears from their counsel's

suggested damages calculations that plaintiffs do not seek an award for unlawfully retained

gratuities in their damages calculations.  (See Faillace Decl., Ex. K).  Since plaintiffs have not

met their burden of demonstrating their entitlement to this category of damages with any

specificity, the Court respectfully recommends that plaintiffs not be awarded any damages to

compensate for unlawfully retained gratuities.

G.  Liquidated Damages Under the FLSA and NYLL

In addition to compensatory damages, plaintiffs seek liquidated damages pursuant to both

federal and state law.  See 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  Under the FLSA, an

---

[12]Since the tip credit is an affirmative defense, the Court does not consider tips in
calculating the minimum wages owed to plaintiff.  Kleitman v. MSCK Mayain Olam Habba Inc.,
No. 11 CV 2817, 2013 WL 4495671, at *3 (E.D.N.Y. Aug. 20, 2013) (citing Chung v. New
Silver Palace Restaurant, Inc., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002)) (holding that "[w]hen
tips are retained by the employer, the 'tip credit' cannot be used to meet the required minimum
wage").

employer who fails to pay his or her employees the minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the employee . . . affected in the amount of [his or her] unpaid minimum wages, or [his or her] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was not a violation of the FLSA. Jemine v. Dennis, 901 F. Supp. 2d 365, 388 (E.D.N.Y. 2012) (citing 29 U.S.C. §§ 216(b), 260). This award serves as "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA." Id. (quoting Herman v. RSR Secs. Servs., Ltd., 172 F. 3d 132, 141-42 (2d Cir. 1999)). Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiffs; thus, the Court finds that plaintiffs are entitled to an award of liquidated damages under the FLSA.

Similarly, under the NYLL, an employee is entitled to receive liquidated damages "equal to one hundred percent of the total amount of the wages found to be due," unless the employer provides a good faith basis for believing he or she was in compliance with the law. N.Y. Lab. L. §§ 198(1-a), 663(1); Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 CV 10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (citing Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 144 (2d Cir. 2013) (holding that, "[a]s of November 24, 2009, an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law'")). In the absence of proof of a good faith basis, plaintiffs are entitled to recover liquidated damages "equal to one hundred percent of the total of such underpayments found to be due." Gold v. N.Y. Life Ins. Co., 730 F.3d at 144

(holding that the amendments to the NYLL that went into effect on April 9, 2011, raising the amount of liquidated damages recoverable under the statute, could not be applied retroactively); see also N.Y. Lab. L. § 663(1).

Although the Court finds that plaintiffs may be entitled to an award of liquidated damages under both the NYLL and the FLSA, the Court respectfully recommends that plaintiffs not be awarded cumulative liquidated damages for any overlapping claims for the three-year period covered by FLSA. The 2010 amendments to the NYLL resulted in a state statute that is, in all material respects, identical to the FLSA, and an award of liquidated damages under one satisfies the provision for liquidated damages in the other. See Chowdhury v. Hamza Express Food Corp., 666 Fed. App'x 59, 61 (2d Cir. 2016) (analyzing the effects of the amendments to the NYLL); see also Pest v. Bridal Works of New York, Inc., No. 16 CV 1523, 2017 WL 3393967, at *16 (E.D.N.Y. July 27, 2017) (collecting cases).

Accordingly, because the law is clear that plaintiffs "may recover under the statute which provides the greatest amount of damages," Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)), report and recommendation adopted as modified, No. 12 CV 5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015); Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (holding that where plaintiffs have prevailed under both state and federal law, "the law providing the greatest recovery will govern"), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)); Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012), the Court respectfully recommends that plaintiffs be awarded liquidated damages pursuant to the NYLL. The NYLL provides the greater

recovery in liquidated damages for the plaintiffs because it allows them to recover liquidated damages for all wage claims (but not wage notice claims)[13] brought under the NYLL, including the spread of hours wages owed to plaintiffs, whereas the FLSA only provides liquidated damages for claims brought under the FLSA—in this case, only the claims for unpaid overtime wages owed. Moreover, unlike the FLSA, the NYLL allows for the recovery of both liquidated damages and pre-judgment interest. Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).

As described above, plaintiff Martinez is owed a total of $115,272.25 in unpaid overtime wages and $6,891.75 for the spread of hours claim. Under the NYLL, the plaintiff is entitled to 100% of such damages as liquidated damages. Accordingly, it is respectfully recommended that plaintiff Martinez be awarded liquidated damages in the total amount of $122,164.00.

As described above, plaintiff Mosso is owed a total of $82,820.52 in unpaid overtime wages and $7,040.00 for the spread of hours claim. Under the NYLL, she is entitled to 100% of such damages as liquidated damages. Accordingly, it is respectfully recommended that plaintiff Mosso be awarded liquidated damages in the total amount of $89,860.52.

As described above, plaintiff Lopez is owed a total of $88,381.13 in unpaid overtime wages and $6,111.75 for the spread of hours claim. Under the NYLL, the plaintiff is entitled to 100% of such damages as liquidated damages. Accordingly, it is respectfully recommended that plaintiff Lopez be awarded liquidated damages in the total amount of $94,492.88.

---

[13] See N.Y. Lab. L. § 198(1-a) (providing that an employee may recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the *wages found to be due*") (emphasis added); Tan v. Voyage Express, Inc., No. 15 CV 6202, 2017 WL 2334969, at *6-7 (E.D.N.Y. May 25, 2017) (excluding damages under the WTPA for wage notice violations from the liquidated damages calculation); Santana v. Latino Express Rests., Inc., 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016) (same).

H.  Prejudgment Interest

Finally, plaintiffs seek to recover prejudgment interest on all damages awarded under the NYLL, calculated at a rate of 9% per year pursuant to New York law.  See N.Y. C.P.L.R. § 5004.  The Second Circuit has held that, because liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999). Where plaintiffs receive damages under both the FLSA and the NYLL, prejudgment interest accrues on any damages for which liquidated damages are not awarded under the FLSA; prejudgment interest may not be awarded under the NYLL in addition to liquidated damages for violations of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011). Here, because the Court has recommended that plaintiffs receive damages only under the NYLL, plaintiff is entitled to prejudgment interest on:  (1) plaintiffs' unpaid overtime wages and (2) plaintiffs' spread of hour wages.  However, plaintiffs are not entitled to prejudgment interest on amounts awarded under the Wage Theft Prevention Act.  See N.Y. Lab. L. §§ 195(1)-(3); see also Schalaudek v. Chateau 20th Street LLC, No. 16 CV 11, 2017 WL 729544, at *10-11 (S.D.N.Y. Feb. 24, 2017) adopted in part and modified on unrelated grounds by 2017 WL 1968677 (S.D.N.Y. May 11, 2017) (awarding prejudgment interest only on minimum wages and unlawfully withheld tips); Dominguez v. B S Supermarket, Inc., No. 13 CV 7247, 2015 WL 1439880, at *18–19 (E.D.N.Y. Mar. 27, 2015) (awarding prejudgment interest only on unpaid wages for which plaintiff was compensated under state law and not on damages awarded for defendants' failure to issue written notice of plaintiff's rate of pay in violation of NYLL § 195(3)).

Plaintiffs have not specified a date from which they seek prejudgment interest on their

damages under the NYLL.  Prejudgment interest under New York Law is governed by Section 5001 of the New York Civil Practice Law and Rules, which provides that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  N.Y. C.P.L.R. § 5001(b).  In addition, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  Id.  Where, as here, violations of the NYLL occur over an extended period, courts calculate prejudgment interest from a "single reasonable intermediate date."  N.Y. CPLR § 5001(b).  See, e.g., Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011) (holding that "[t]he plaintiffs have calculated prejudgment interest from the midway point of each plaintiff's employment, which is a reasonable approach").

Given the various time periods involved for each plaintiff's claims, the Court has selected the following dates as the accrual points for prejudgment interest:  April 20, 2013, which marks the midway point in the period from April 22, 2010 to April 19, 2016 for which plaintiffs Martinez and Mosso seek damages, and October 17, 2013, which marks the midway point in the period from April 15, 2011 to April 19, 2016 for which plaintiff Lopez seeks damages.  The amounts owed are calculated in Table 3 below:

**Table 3**

| Plaintiff | Total Award | Per Diem Interest | Accrual Date | Days Between Accrual and R&R | Total Interest to Date of R&R |
|-----------|-------------|-------------------|--------------|------------------------------|-------------------------------|
| Martinez | $122,164.00 | $30.12 | 4/20/2013 | 1617 | $48,708.29 |
| Mosso | $89,860.52 | $22.16 | 4/20/2013 | 1617 | $35,828.50 |
| Lopez | $94,492.88 | $23.30 | 10/17/2013 | 1437 | $33,481.55 |

Thus, the Court finds that plaintiff Martinez is owed prejudgment interest in the amount of $48,708.29; plaintiff Mosso is owed pre-judgment interest in the amount of $35,828.50; and plaintiff Lopez is owed pre-judgment interest in the amount of $33,481.55.

I.   Attorneys' Fees and Costs

Plaintiffs seek to recover an award of "reasonable attorney's fees and costs" (see Compl. at 24; Faillace Decl. ¶ 104), pursuant to the applicable provisions of the FLSA and the NYLL. See 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  In accordance with the requirements established by the Second Circuit, see, e.g., Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 148 (2d Cir. 2014); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted a Declaration, along with contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, along with the name of the attorney performing the work and a description of the services rendered.  (See Faillace Decl., Ex. L).  Plaintiffs' counsel has also submitted a bill of costs incurred in connection with the instant action.  (See id.)

1)   Attorneys' Fees

Courts employ the "lodestar" method in calculating reasonable attorneys' fees,

multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  See, e.g., Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008).  Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors.  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

### i. Reasonable Hourly Rate

In assessing whether legal fees are reasonable, the Court must determine the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 183.  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  Id.  In Arbor Hill, the Second Circuit set forth the following factors to guide a court's inquiry into what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases[.]

Id. at 187 n.3 (citation omitted).  A number of courts within the Second Circuit have applied these factors when awarding attorney's fees.  See, e.g., Manzo v. Sovereign Motor Cars, Ltd.,

No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . . , and other returns (such as reputation, etc.) the attorney might expect from the representation[.]

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007). In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters, but also considers each attorney's degree of skill and the Court's own experience dealing with similar claims.

In this case, plaintiffs were represented by Michael Faillace & Associates, P.C. (the "Firm"). Plaintiffs seek: (1) an hourly rate of either $450.00 or $400.00 for the work of Michael Faillace, Esq., the managing member of the Firm; and (2) an hourly rate of $375.00 for the work of Jesse Barton, an associate with five years of experience. (Faillace Decl. ¶ 102).

Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with FLSA and NYLL cases, the Court finds that the rate of $450.00 per hour for Mr. Faillace's work is at the upper range of the rates ordinarily awarded to partners in this district, which generally range from $300 to $450 per hour for partners. See, e.g., Saucedo v. On the Spot Audio Corp., No. 16 CV 00451, 2016 WL 8376837, at *18 (E.D.N.Y. Dec. 21,

2016), report and recommendation adopted, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); Cortes v. Warb Corp., No. 14 CV 7562, 2016 WL 1266596, at *6 (E.D.N.Y. Mar. 15, 2016), report and recommendation adopted, 2016 WL 1258484 (E.D.N.Y. Mar. 30, 2016) (observing that, "[w]ithin this District, the following rates have been endorsed as reasonable: $300.00–$450.00 for partners, $200.00[–]$300.00 for senior associates, and $100.00[–]$200.00 for junior associates").  The rate of $450 per hour also greatly exceeds the rates recently awarded to Mr. Faillace in the Eastern District of New York.  See, e.g., Quito v. El Pedragal Rest. Corp., No. 16 CV 6634, 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding Mr. Faillace $375 per hour); Lopez v. SGRA Corp., No. 14 CV 5225, 2016 WL 8711350, at *10 (E.D.N.Y. Mar. 31, 2016) (awarding Mr. Faillace $375 per hour); Quiroz v. Luigi's Dolceria, Inc., No. 14 CV 871, 2016 WL 6311868, at *4 (E.D.N.Y. Oct. 28, 2015) (awarding Mr. Faillace $350 per hour); Gonzalez v. Jane Roe Inc., No. 10 CV 1000, 2015 WL 4662490, at *6 (E.D.N.Y. July 15, 2015) (awarding Mr. Faillace $300 per hour).

Given the prevailing rates in this District for partners, the Court finds that a reasonable rate for Mr. Faillace's work is $375.00 per hour.

The Firm also seeks to be awarded a rate of $375.00 per hour for the work of Jesse Barton, an associate with five years of experience.  (Faillace Decl. ¶ 102).  That rate is significantly higher than the rates ordinarily awarded to more senior associates.  See Quito v. El Pedragal Rest. Corp., No. 16 CV 6634, 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (quoting Tacuri v. Nithin Constr. Co., No. 14 CV 2908, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (finding that in FLSA cases, "a reasonable hourly rate for a senior associate ranges from $200 to $300"); Griffin v. Astro Moving & Storage Co. Inc., 2015 WL 1476415, at *8 (citing cases) (holding that recent opinions in this district have found reasonable hourly rates to

be in the range of $200 to $325 for senior associates in FLSA cases); <u>Pall Corp. v. 3M</u>

<u>Purification Inc.</u>, No. 03 CV 0092, 2012 WL 1979297, at *4 (E.D.N.Y. June 1, 2012) (holding

that "[r]ecent opinions issued by courts within the Eastern District of New York have found

reasonable hourly rates to be 'approximately $300–$450 for partners, $200–$325 for senior

associates, and $100–$200 for junior associates'").  The Court has therefore reduced Mr.

Barton's hourly rate to $225.00 per hour.

## ii.  Reasonable Number of Hours

The next step in awarding attorneys' fees is determining the reasonableness of the

number of hours expended by counsel.  <u>See, e.g.</u>, <u>LaBarbera v. Empire State Trucking, Inc.</u>, No.

07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  In reviewing a fee application,

the court "should exclude excessive, redundant or otherwise unnecessary hours."  <u>Bliven v.</u>

<u>Hunt</u>, 579 F.3d 204, 213 (2d Cir. 2009) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433-35,

440 (1983)).  The court should examine each entry "with a view to the value of the work product

of the specific expenditures to the client's case."  <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 116 (2d

Cir. 1997).  If the court finds "that some of the time was not reasonably necessary . . . it should

reduce the time for which compensation is awarded accordingly."  <u>Louis Vuitton Malletier, S.A.</u>

<u>v. LY USA, Inc.</u>, 676 F.3d 83, 111 (2d Cir. 2012); <u>see also</u> <u>Struthers v. City of New York</u>, No.

12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because the

fees requested for responding to motion papers were "excessive"); <u>Jemine v. Dennis</u>, 901 F.

Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and

complexity of the submissions and calculations" did not reflect the hours expended); <u>Ehrlich v.</u>

<u>Royal Oak Fin. Servs.</u>, No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012)

(reducing attorneys' fees because the attorney's litigation of the suit made apparent his "lack of

experience" and for duplicative entries); <u>Quinn v. Nassau County Police Dep't</u>, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); <u>American Lung Ass'n v. Reilly</u>, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work," and reducing plaintiffs' lawyer's hours by 40%).

As noted above, the Firm has submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, and the names of the individuals who provided the services, along with a description of services performed.  In total, Mr. Faillace billed 9.85 hours of work and Mr. Barton billed 3.7 hours of work.  (Faillace Decl., Ex. L).

Mr. Faillace billed 1.8 hours for meeting with clients, .75 hours for searching the corporation database, 3.9 hours for drafting the Complaint, .9 hours for reviewing the Complaint, and 2.5 hours for finalizing and filing the Complaint.  (<u>See</u> <u>id.</u>)  Courts in both the Southern and Eastern Districts of New York have "noted the boilerplate nature of the papers used by Faillace's firm and have reduced or excluded fees sought for hours purportedly spent drafting, finalizing, and filing the complaint." <u>Xochimitl v. Pita Grill of Hell's Kitchen, Inc.</u>, No. 14 CV 10234, 2016 WL 4704917, at *21 (S.D.N.Y. Sept. 8, 2016), <u>report and recommendation adopted by</u> 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016) (collecting cases).  As discussed <u>supra</u>, the Complaint in this case contains allegations regarding minimum wage violations that turned out to have no factual support.  At least one other court has noted "some concern that [Faillace] either did not adequately investigate the viability of Plaintiff's FLSA claims, or asserted and proceeded on those claims primarily for the purpose of obtaining and maintaining federal jurisdiction over this

action, and not because Plaintiff actually had good-faith evidentiary support for his [allegations]." Sanchez v. I&A Rest. Corp., No. 14 CV 726, 2017 WL 2537814, at *1 n.2 (S.D.N.Y. May 22, 2017). Given the boilerplate nature of the Complaint, "it is difficult to imagine how a case that does not raise particularly novel or complex legal issues and required interaction with only [three] plaintiffs in preparing the complaint . . . would require Plaintiffs' counsel to expend the time they claim." Angamarca v. Pita Grill 7 Inc., No. 11 CV 7777, 2012 WL 3578781, at *13 (S.D.N.Y. Aug. 2, 2012). The Court therefore recommends that the allowable time for drafting the Complaint be reduced from 3.9 hours to 2 hours and that the .9 hours for reviewing the Complaint be disallowed.

Courts have also observed in reviewing Faillace's billing entries that "[f]iling a document is plainly a task that could have been performed by a junior associate or paralegal, billing at a lower hourly rate." Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14 CV 7850, 2016 WL 8650464, at *19 (S.D.N.Y. Nov. 7, 2016), report and recommendation adopted by 2017 WL 1194682 (S.D.N.Y. Mar. 30, 2017). The entry describing filing is "block-billed," which prevents the Court from determining how much time was spent "finaliz[ing]" the Complaint and how much time was spent in filing it. See id. at *20 (describing the same problem with a similar entry in one of Mr. Faillace's cases). The Court therefore finds that the 2.5 hours Mr. Faillace spent finalizing and filing the Complaint should be disallowed.

Mr. Faillace also seeks compensation for 0.75 hours spent searching a "Corporation & Business Entity Database." (See Faillace Decl., Ex. L). Once again, courts have repeatedly criticized Mr. Faillace for seeking to charge for this work at his partner rate when it easily could have been done by a junior attorney or paralegal. See, e.g., Sanchez v. I&A Rest. Corp., 2017 WL 2537814, at *5; Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., 2016 WL 8650464, at *19.

This Court joins its colleagues in finding that the charge for searching the database should be disallowed.

Plaintiffs' default papers also rely extensively on boilerplate language and exhibits that were sloppily drafted, and which hindered the Court in its disposition of the motion. The Court therefore recommends that the 3.5 hours billed by Mr. Barton to draft the default motion be reduced to 2 hours. Cf. Xochimitl v. Pita Grill of Hell's Kitchen, Inc., 2016 WL 4704917, at *21 (disallowing Faillace's fees for drafting and filing the Complaint and reducing the remaining fees sought by 80%).

Thus, in light of the rates and reductions discussed above, the Court respectfully recommends that plaintiffs be awarded attorney's fees of $1,920.00, as follows:

| Date | Attorney | Description | Hours Billed | Hours Allowed | Rate Allowed | Total |
|------|----------|-------------|--------------|---------------|--------------|-------|
| 4/20/16 | Faillace | Meeting with clients/intake-retainer | 1.8 | 1.8 | $375 | $675.00 |
| 4/20/16 | Faillace | Research/Search the Corporation & Business Entity Database | 0.75 | 0.0 | $375 | $0.00 |
| 4/20/16 | Faillace | Drafted complaint | 3.90 | 2.0 | $375 | $750.00 |
| 4/21/16 | Faillace | Review complaint | 0.90 | 0.0 | $375 | $0.00 |
| 4/22/16 | Faillace | Finalized and filed complaint | 2.5 | 0.0 | $375 | $0.00 |
| 9/27/16 | Barton | Drafted status letter | 0.2 | 0.2 | $225 | $45.00 |
| 9/27/16 | Barton | Drafted default motion | 3.5 | 2.0 | $225 | $450.00 |
| | | **Total Recommend Attorney's Fees:** | | | | **$1,920.00** |

2) Costs

Plaintiffs have also requested $700.00 in costs, representing the filing fee in this district of $400.00 and, although there are only three defendants, four fees of $75.00 for service of

process fees.[14]  (Id.)

Pursuant to 28 U.S.C. § 1988, a prevailing party may recover certain costs, such as filing and service of process fees.  See Anderson v. City of New York, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001).  Section 1988 allows for recovery of a broader range of costs than 28 U.S.C. § 1920, permitting a party to recover those costs which are "ordinarily charged to clients in the legal marketplace."  Id.  Importantly, however, the party moving for costs bears the burden of demonstrating the reasonableness of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery.  See, e.g., Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., No. 04 CV 2293, 2009 WL 5185808 at *9-10 (E.D.N.Y. Dec. 23, 2009) (reducing award of costs where certain costs were not properly documented); Rotella v. Board of Ed. of City of New York, No. 01 CV 434, 2002 WL 59106 at *5 (E.D.N.Y. Jan. 17, 2002) (declining to award costs which would ordinarily be recoverable under § 1988 because of plaintiff's failure to support demands with adequate documentation).

No receipts have been submitted for the filing fee or for the other expenses totaling $700.00.  While the Court takes judicial notice of the filing fee in this district, see Joe Hand Promotions v. Elmore, No. 11 CV 3761, 2013 WL 2352855 at *12 (E.D.N.Y. May 29, 2013) (taking judicial notice of the filing fee for this court); Phillip Morris USA, Inc. v. Jackson, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (same), the Court cannot simply accept at face value the ledger that plaintiffs' counsel has created without any additional evidence of the costs listed therein.

---

[14] The Court observes that this is not the first time Faillace's firm has inexplicably sought reimbursement for serving process more times than there are defendants.  See Xochimitl v. Pita Grill of Hell's Kitchen, Inc., 2016 WL 4704917, at *22 n.15.

Accordingly, the Court respectfully recommends that plaintiffs be awarded $400 in costs, representing the filing fee for this Court, but that the remaining $300.00 requested for other costs be denied in the absence of supporting documentation.

<u>CONCLUSION</u>

In total, the Court respectfully recommends that plaintiffs be awarded $750,753.14 in damages and interest, and $2,320.00 in attorneys' fees and costs for a sum total of $753,073.14 as shown in the chart below.

**Total Damages Owed to Plaintiffs**

| Claim | Martinez | Mosso | Lopez |
|---|---|---|---|
| Unpaid Minimum Wage | $0.00 | $0.00 | $0.00 |
| Unpaid Overtime | $115,272.25 | $82,820.52 | $88,381.13 |
| Unpaid Spread of Hours | $6,891.75 | $7,040.00 | $6,111.75 |
| Wage Notice Damages | $5,000.00 | $7,200.00 | $7,500.00 |
| Retained Gratuities | $0.00 | $0.00 | $0.00 |
| Liquidated Damages | $122,164.00 | $89,860.52 | $94,492.88 |
| Pre-judgment Interest | $48,708.29 | $35,828.50 | $33,481.55 |
| Total for each Plaintiff | $298,036.29 | $222,749.54 | $229,967.31 |
| Attorneys' Fees | $1,920.00 | | |
| Costs | $400.00 | | |
| **TOTAL** | **$753,073.14** | | |

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's

Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiffs are directed to serve a copy of this Order promptly on each defendant by regular mail and by certified mail, return receipt requested, and to file the return receipts on ECF.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:   Brooklyn, New York
September 22, 2017

/s/Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York